No. 35,526

John Ray Ghormley et al., *Appellees*, v. Mark Kleeden et al., *Appellants*.

(124 P. 2d 467)

Opinion filed April 11, 1942.

*Walter F. Jones, Harold R. Branine, C. E. Chalfant* and *J. Richards Hunter,* all of Hutchinson, were on the briefs for appellants.

*Charles M. Williams, Donald C. Martindell, W. D. P. Carey, Wesley E. Brown* and *Edwin B. Brabets,* all of Hutchinson, were on the briefs for appellees.

The opinion of the court was delivered by

Allen, J.: On May 8, 1941, the plaintiffs agreed to execute four oil and gas leases on 320 acres of land in Reno county, to the defendant Mark Kleeden. The leases were to be executed and placed in escrow to be delivered to Kleeden when contracts for drilling on the land had been procured by Kleeden. The defendant Kleeden agreed to accept the leases and to drill a test well when he was furnished an abstract showing plaintiffs had a good and merchantable title to the land. Defendant Kleeden declined to accept the leases

tendered by plaintiffs on the ground the plaintiffs did not have a good merchantable title. Thereupon the plaintiffs filed the present action praying for specific performance of the contract. This appeal is from a judgment for plaintiffs.

The plaintiffs claim under the will of William Ray Ghormley, who died March 7, 1909. The will provided:

"Second: I give, devise and bequeath unto my beloved wife, Sarah H. Ghormley, to have and to hold during the term of her natural life and enjoy the use, rents and profits thereof, the following described real estate, lying and situate in the county of Reno, in the state of Kansas, to wit: (description of land) and it is my will that at the death of my said wife the above described real estate shall go to and become the property of my beloved children, viz.: Carrie Jane Flagg, nee Ghormley, my daughter; my son, D. W. Ghormley; my daughter, Hattie E. Hamilton, nee Ghormley; my son, Charles E. Ghormley; my daughter, Jessie Pearl Murphy, nee Ghormley; and my son, John Ray Ghormley, share and share alike.

"And should I survive my said wife, then at my death the above-described real estate shall go to my said children, share and share alike.

"Should any of my said children die before the decease of my said wife, then at her death, the share which would have gone to such deceased child, shall go to the children of such deceased child and if there are no children and the deceased child leave a wife or husband then one-half of such share shall go to said surviving wife or husband, and the other half to the brothers and sisters of such deceased child, share and share alike. And should I survive my said wife, then at my death, if any of my children shall have died leaving children, then the children of such deceased child shall take such deceased child's share, share and share alike; and should such deceased child die leaving no children but leaving a wife or husband, such wife or husband shall take one-half of said deceased child's share and the other half thereof shall go to the brothers and sisters of such deceased child, share and share alike; and in case any of my said children shall die before the decease of my said wife or prior to my decease and leave no wife or husband or children, then the entire share of such deceased child shall go to the surviving brothers and sisters of such deceased child."

At his death the testator left surviving his widow Sarah H. Ghormley and his six children mentioned in his will. They are the plaintiffs in this action.

Plaintiffs contend the remainder to the children was indefeasibly vested, and therefore the lease executed by the widow and the children would pass a merchantable title. Plaintiffs cite and rely on *Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288; *McLean v. Stanley*, 134 Kan. 234, 5 P. 2d 839; *Stevenson v. Stevenson*, 102 Kan. 80, 169 Pac. 552; *Anderson v. Wise*, 144 Kan. 612, 62 P. 2d 805, and *Faris v. Nickel*, 152 Kan. 652, 107 P. 2d 721.

On behalf of defendant Kleeden it is asserted that the interest owned by the children "is a contingent interest, or at best a vested interest subject to divestiture—which in either event makes the title offered by appellees unmarketable." In support of these contentions our attention is directed to *Williams v. Bricker,* 83 Kan. 53, 109 Pac. 998; *Bullock v. Wiltberger,* 92 Kan. 900, 142 Pac. 950; *Purl v. Purl,* 108 Kan. 673, 197 Pac. 185; *Kirkpatrick v. Kirkpatrick,* 112 Kan. 314, 211 Pac. 146; *Robinson v. Barrett,* 142 Kan. 68, 45 P. 2d 587; *Koelliker v. Denkinger,* 148 Kan. 503, 83 P. 2d 703; *Jonas v. Jones,* 153 Kan. 108, 109 P. 2d 211, and *Ward v. Ward,* 153 Kan. 222, 109 P. 2d 68.

If the remainder to the six children of the testator was indefeasibly vested the judgment must be affirmed. If the remainder to the children was contingent, or if it was vested but liable to be divested upon the contingencies specified in the will, then the judgment cannot be sustained.

In determining the questions presented, the intention of the testator must be our guide. The intention is to be ascertained by reading the will as an entirety, rather than from any clause or paragraph considered by itself. These principles are so firmly established as to render the citation of authorities unnecessary.

We have quoted item two of the will, which contains three paragraphs. Under the first paragraph the testator gave his wife a life estate in the land in question and provided that at her death the property was to go to his six named children, share and share alike. If the testator had stopped with the first paragraph, the remainder in the six named children would have been indefeasibly vested. But it was further provided that if any of the children should die before the death of the testator's wife, the share of such child was to go (1) to the children of such child, and (2) if no children, then in case the deceased child should leave a wife or husband, then one-half of the share of the deceased child was to go to the surviving wife or husband and one-half to the brothers and sisters of such deceased child, and (3) if no children, and no wife or husband, then the entire share was to go to the surviving brothers and sisters of such child.

The intention of the testator is free from doubt. Why should not the intention of the testator so plainly expressed be carried into effect?

That a vested remainder may be subject to complete defeasance

has been held in many of our cases. In *Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621, the testator gave a life estate to his wife, with a vested remainder to his children and clothed the life tenant with a power of disposition. The fact that a sale by the life tenant in the exercise of the power given would divest the remainder in the children did not prevent the remainder from being vested. It was there stated: "The fact that the life tenant has the power of disposition—the power to exhaust the property—does not alter the legal status of the remainderman's right." (p. 97.) Well-reasoned opinions in other jurisdictions are to the same effect. (*Ducker v. Burnham,* 146 Ill. 9, 34 N. E. 558; *Caples v. Ward,* 107 Texas 341, 179 S. W. 856.)

In *Markham v. Waterman,* supra, reference was made to *Blanchard v. Blanchard,* 1 Allen (83 Mass.) 223. In that case the testator devised land to his wife for life with remainder to his five named children, and provided that if any of the children should die before his wife the property was to go to the survivors, except they should leave issue, in that case to go to such issue. The court ruled that the remainder to the children was vested defeasible upon the stated contingency.

In *Faris v. Nickel,* 152 Kan. 652, 107 P. 2d 721, the testator devised land to his wife for life "with remainder at her death to my children, in fee simple, forever, the descendants of any deceased child or children to take the parents' share." It was held the remainder was vested, but if any child died before the life tenant leaving children, it would be divested in favor of such children. As that event did not happen, the remainder of the son who died was not divested. See, also, *Hammond v. Martin,* 100 Kan. 285, 164 Pac. 171.

In Gray on Perpetuities, 3d ed., § 108 (3), it is stated:

". . . Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to the remainderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested. Thus on a devise to A for life, remainder to his children, but if any child dies in the lifetime of A his share to go to those who survive, the share of each child is vested, subject to be divested by its death. But on a devise to A for life, remainder to such of his children as survive him, the remainder is contingent."

We think it was free from doubt that the remainder to the children is vested but liable to be divested upon the contingencies expressed

in the will. Was the title marketable? In *Eisenhour v. Cities Service Oil Co.*, 149 Kan. 853, 89 P. 2d 912, the rule is stated:

"A title need not be bad in fact in order to be nonmerchantable or unmarketable. It is sufficient to render it so if an ordinarily prudent man with knowledge of the facts and aware of the legal questions involved would not accept it in the ordinary course of business." (Syl. ¶ 3.)

Under the rule there stated (and followed in our recent case *Ayers v. Graff*, 153 Kan. 209, 109 P. 2d 202) we hold the title tendered the defendant Kleeden was not a marketable title. Until the death of the life tenant the final destination of the property cannot be determined.

The judgment is reversed and the cause remanded with directions to enter judgment in favor of the defendant Kleeden.

HOCH, J., not participating.