No. 45,551

In the Matter of the Estate of John F. Maguire, Deceased, DARLENE MAGUIRE SCARBROUGH, *Appellant,* v. LILLIAN MAGUIRE McNUTT, Individually and as Administrator, c. t. a., d. b. n. of the Estate of John F. Maguire, Deceased, JEAN I. CECIL, KATHLEEN I. DUNCAN, and WILLIAM S. GREEN, *Appellees.*

(466 P. 2d 358)

Opinion filed March 7, 1970.

*Howard A. Spies,* of Schroeder, Heeney, Groff, Spies & Craig, of Topeka, argued the cause, and *John F. Gernon,* of Hiawatha, was with him on the brief for the appellant.

*Harry E. Miller,* of Finley & Miller, of Hiawatha, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: In this appeal we are concerned with the interpretation of the last will and testament of John F. Maguire. The foremost and primary question is stated by the parties to be whether the seventh paragraph violates the rule against perpetuities and is an unreasonable restraint on alienation.

Mr. Maguire died December 26, 1932, being survived by his wife, Kathryn, who died July 8, 1966, and the following children: a daughter, Nellie Maguire Green, formerly Nellie Maguire Idol, who died January 9, 1945; a son, John F. Maguire, Jr., who died November 18, 1966; and a daughter, Lillian Maguire McNutt, who is still living. In his will the testator devised a life estate in all his real property to his wife, Kathryn, and devised the remainder interests therein to his children in separate parcels.

Paragraph seven of the will, whose construction triggered this litigation, reads as follows:

"Subject to the life estate of my said wife, Kathryn Maquire, and also subject to the life estate of my son, John F. Maguire, Jr., therein, I will, devise, and bequeath the south one half of the north west quarter of section seventeen (17), in township two (2), range eighteen (18), Brown county, Kansas, to the issue of the body of John F. Maguire, Jr., surviving him with the understanding that Nellie Maguire Idol, and Lillian Maguire McNutt, may, if they so desire, elect to take said above-described real estate, and pay to the issue of the body of John F. Maguire, Jr., deceased, the sum of ten thousand dollars, with interest thereon at the rate of four percent per annum, from the date of the death of said John F. Maguire, Jr., equally between them, share and share alike."

The will was admitted to probate in January, 1933, and the estate remained open for more than a year after Kathryn's death in July, 1966. A petition for final settlement of the estate was heard in probate court on July 28, 1967. Prior to that date, however, written defenses to the petition were filed by Darlene Maguire Scarbrough, the sole issue of John F. Maguire, Jr., who had died the preceding November. Mrs. Scarbrough (who is sometimes referred to herein as Darlene) alleged she was entitled to the land described in paragraph seven, and that the provisions giving Nellie Maguire Idol (now Green) and Lillian Maguire McNutt the right to take the same upon payment of ten thousand dollars was void and unenforceable.

Darlene's contention was rejected by the probate court, which proceeded to assign the testator's real estate in accordance with

the several provisions of the will. The probate court's decision was appealed to district court, which also held that the provisions of paragraph seven did not violate the rule against perpetuities; that Nellie's rights under the option descended to her heirs; and that notice to exercise the option was given Darlene within a reasonable time. Mrs. Scarbrough has appealed to this court from that decision.

No extended dissertation on the rule against perpetuities will be attempted at this time. The rule has been recognized in this state from early statehood and considerable litigation has followed in its wake. For present purposes it will be sufficient to observe that the purpose of the rule is to prevent the creation of future interests in property which will not vest within twenty-one years after some life or lives in being, plus the usual period of gestation. (*In re Estate of Freeman*, 195 Kan. 190, 404 p. 2d 222.)

As to application of the rule against perpetuities in the area of options, we find the test set forth in Restatement, Property, Volume IV, p. 2315:

"Subject to exceptions [none of which appear applicable here] . . . the limitation of an option in favor of a person other than the conveyor is valid because of the rule against perpetuities when, under the language and circumstances of the limitation, such option

"(*a*) may continue for a period longer than the maximum period described in § 374; and

"(*b*) would create an interest in land, or in some unique thing other than land, but for the rule against perpetuities."

In the "Comment" which follows the foregoing statement of the rule, certain requirements are shown. Subparagraph b. thereof, "Requirement of Clause (*a*)" reads in part as follows:

"Under the rule stated in this Section, the option must be one which 'may continue for a period longer than the maximum period described in § 374.' This requirement is not satisfied when the option is found, from the language and circumstances of its creation, to have been intended to be exercisable only by an *already conceived optionee himself, and not by any successor in interest to such optionee*. In any such case the duration of the option is measured by a life in being, namely, the life of the optionee and the rule stated in this Section is inapplicable. . . ." (p. 2316.)

The rule appears to be quite general in this country that a testamentary option, that is, option granted or created by will, confers a right which is personal to the optionee himself, and which will not survive his death. Formal expression is given to this principle in an annotation appearing in 28 A. L. R. 2d: Wills-Option-Who May Exercise, where on pages 1167, 1168, the author says:

". . . [A] majority of the courts have held that a right or option given by will to purchase estate property was personal to the optionee, and did not survive his death so as to become exercisable by his successors in interest."

This prevailing rule concerning the exercise of options created by will is stated in 96 C. J. S., Wills, § 1104, p. 834, in these words:

". . . The option is personal to the optionee; it cannot be exercised by a stranger or assignee or by the heirs or personal representative of the optionee, . . ."

Being personal to the optionee who is designated in the will, a testamentary option must be exercised, if at all, by the named optionee within his own lifetime—a lifetime in existence. Thus, the requirement of the rule respecting options which we have heretofore quoted from Restatement, *supra*, is not fulfilled, and the rule against perpetuities is not offended. This corollary is reflected in the text of the annotation in 44 A. L. R. 2d; Option Created By Will, p. 1228, where it is said:

"In the majority of the cases in which the question has arisen it has been held or recognized that the option in question which was created by will for the purchase of real estate was not void as contrary to the rule against perpetuities."

For cases supporting this position see, among others, *Ludwick's Estate,* 269 Pa. 365, 112 A. 543; *Weitzmann v. Weitzmann,* 87 Ind. App. 236, 161 N. E. 385; *Brown v. Brown,* 53 N. M. 379, 208 P. 2d 1081; *Austin Presbyterian Theological Sem. v. Moorman,* 391 S. W. 2d 717 (Tex.), cert. den., 382 U. S. 957, 15 L. Ed. 2d 361, 86 S. Ct. 434.

We have been unsuccessful in our search to discover cases from this jurisdiction directly in point, and none have been called to our attention by counsel on either side. However, in *Campbell v. Warnberg,* 133 Kan. 246, 299 Pac. 583, we believe there is tacit recognition of the principle that option granted by will to purchase real estate does not violate the rule against perpetuities.

The testamentary scheme in the *Campbell* case was somewhat complicated, but essentially the will provided that certain of the testator's children, *i. e.,* the sons, should have the right to purchase the interest of their sisters at a price fixed by the will. Some fifteen months after the father's death, and after oil had been discovered on parts of the land, greatly increasing the value of the whole, the optionees, for the first time, and in an outstanding display of brotherly solicitude, sought to exercise the option. This court held, in that

case, that since the option contained no limit of time for its exercise, the law required that it be exercised within a reasonable time; and that the optionees' failure to exercise the option for a period of fifteen months after their father's death, during which time oil development had taken place and land values had skyrocketed, constituted an unreasonable delay and defeated their option entirely.

In summary, we believe the commanding weight of authority to be: (1) That an option to purchase real estate created in a will is personal to the optionee, or optionees, and must be exercised by him or them in person; (2) that where no time limit is specified for the exercise of a testamentary option, it must be exercised within a reasonable time; (3) being personal in character, and exercisable only within the lifetime of the optionee or optionees, as the case may be, an option created by will does not contravene the rule against perpetuities. Accordingly, we are constrained to hold that the option provided for in paragraph seven of John F. Maguire's will does not violate the rule against perpetuities.

Furthermore, we do not view the provisions of paragraph seven as being an unreasonable restraint on alienation. As we have said, the option granted in that paragraph is personal and exercisable, if at all, only during the lifetime of the named optionees. So construed, the option may be executed only during lives in being, which we cannot regard, in itself, as an unreasonable period of restriction upon alienation. Moreover, it has been held that an option does not suspend the power of alienation where the parties are in being and ascertainable, and can together convey the entire title. (70 C. J. S., Perpetuities, § 56, p. 657; *Lantis v. Cook*, 342 Mich. 347, 69 N. W. 2d 849.)

We have not overlooked the case of *Henderson v. Bell*, 103 Kan. 422, 173 Pac. 1124, wherein it was held that a contract granting an option to purchase certain real estate at a specified price, but unlimited as to time of exercise, was void as violating the rule against perpetuities. We would point out however, that the option in that case was created by a contract, commercial in nature, and not by the terms of a will, in the interpretation of which the intention of the testator is always of paramount concern. In such respect, at least, the facts in *Henderson* differ from these here, and we do not consider that decision as of controlling significance in this case.

Included in the memorandum opinion, which the trial court filed at the time of entering its judgment, is a statement that the parties

had agreed that the option right of Nellie Maguire Idol Green, who died in 1945, decended to her heirs. This has caused some head scratching on our part, for ordinarily, as we have said more than once, courts are bound by stipulations of the litigants. Our conclusion that a testamentary option does not survive the optionee's death would seem to conflict with the foregoing rule, for it is directly contrary to the agreement reached by the parties herein.

However, we believe the rule, valid though it may be where questions of fact are concerned, cannot be invoked to bind or circumscribe a court in its determination of questions of law. This principle is set out in 50 Am. Jur., Stipulations, § 5, p. 607:

"It has frequently been stated as a general rule that the decision of questions of law must rest upon the court, uninfluenced by stipulations of the parties, and it is generally held, accordingly, that stipulations as to what the law is are invalid and ineffective. . . ."

See, also, *Beams v. Werth*, 200 Kan. 532, 549, 438 P. 2d 957, where an analogous axiom was defined by this court.

In this case, we are asked to determine whether the option contained in paragraph seven of the Maguire will is invalid as violating the rule against perpetuities. In our view the answer largely depends on whether a testimentary option is personal or whether it survives the death of an optionee. The legal consequences attending the option are matters which this court must be free to determine, unfettered by limitation, in dealing with the ultimate issue of validity.

Although we have decided that the option created in paragraph seven of Mr. Maguire's will does not infringe upon the rule against perpetuities, this does not finally dispose of this lawsuit. As we have said, Nellie Maguire Idol (or Green) predeceased both her mother and her brother, the two life tenants. Having departed this life before the option could first have been exercised, she of course has never been in a position to exercise it. Neither may her heirs exercise the option, although they have attempted to do so, simply because the option did not survive her death.

Thus the final question for our decision narrows down to this: Can Lillian Maguire McNutt, alone, exercise the option granted her and her sister Nellie—the latter now being deceased?

The question is not free from doubt and we have found very scant authority, indeed, which seems to be in point. In 17 Am. Jur. 2d, Contracts, § 61, p. 397, this statement appears in the text:

"It is said that the consent of all persons having an interest in an option is necessary to its exercise by any one of them. . . ."

Cited in support of that rule is *Pratt v. Prouty*, 104 Iowa 419, 73 N. W. 1035. Although the option in that case was not testamentary in character, and all three optionees named therein were still alive when one of their number attempted to exercise the option, the case appears analogous in principle to the one now before us.

Perhaps equally analogous are cases with respect to the exercise of powers over property, such as powers of appointment, powers of sale, and the like. The usual rule appears to be that when a power has been given to joint donees, all donees must join in its execution. (41 Am. Jur., Powers, § 29, p. 825.)

Even though there is no wealth of authority to guide us in this area, we believe the preferred rule to be that an option granted to two or more optionees must be exercised by them all, absent circumstances clearly indicating a contrary design on the part of the optionor. The record before us is entirely void of evidence from which we might infer such an intent on the part of Mr. Maguire.

Accordingly, the option in this case is no longer operative. Nellie Maguire Green's rights under the option did not survive her death and cannot be exercised by her survivors. Furthermore, the option being joint, it may not now be executed by the surviving optionee, Lillian Maguire McNutt. This leaves Darlene with title to the land no longer subject to the option set forth in her grandfather's will.

The judgment of the trial court is reversed with directions to enter judgment in favor of Darlene Maguire Scarbrough in accordance with views set forth in this opinion.

FONTRON, J., dissenting in part: My only disagreement with the majority view is that it denies to Lillian Maguire McNutt the right to exercise any part of the option. Her father's intention was clear, I believe, that she and her sister Nellie were to share equally whatever benefits might accrue from the option accorded them. In common fairness, I see no good reason to deny Mrs. McNutt the fruits of her father's beneficence merely because of her sad misfortune in losing her sister.

Concededly, the law has rarely touched this area in published form, so far as I am able to ascertain. However, language found in *Lantis v. Cook*, 342 Mich. 347, 69 N. W. 2d 849, cited in the court's opinion on another point, appears to be relevant. The

option involved in that case was one reserved by a husband and wife to repurchase their home should certain contingencies arise. In the course of its opinion the court said on page 354:

"Application of the common-law rule against perpetuities would leave the option intact because it was not exercisable beyond lives in being and 21 years, but was intended to and could be exercised only by and, hence, during the lives of the 2 optionees *or the survivor of them.* . . ." (Emphasis supplied.)

*Pratt v. Prouty,* 104 Iowa 419, 73 N. W. 1035, also mentioned by the court, is not, from my personal view point, a satisfactory precedent. The option in that case was for the purchase of certain shares of stock in a small corporation, given by one of the four stockholders to the other three. In giving the option, the grantor agreed to deliver the stock "in the number of shares to each as they may agree on." One of the three optionees, without obtaining consent of the others, sought to exercise the option alone. The Iowa court refused to countenance such action, holding that consent of the other optionees was required. Under the facts of that case the court was eminently correct, but the factual situation here is quite different.

Neither do I find too close an analogy between options and powers, so far as their joint exercise is concerned. In creating a power of appointment the grantor endows the grantee with the exercise of discretion in carrying out his mission. Consequently, in appointing two or more grantees, the donor places reliance on the discretion and trustworthiness of both to fulfill the terms of the appointment. The same, I believe, is not so true in the case of options.

Regardless of what might have been the correlative rights and duties of the two optionees had both been alive at the death of the last life tenant, I see no legal or practical impediment to Mrs. McNutt's exercising the option as to a one-half interest in the farm, as intended by her father, upon payment to Mrs. Scarbrough of one-half the option price. Although the option was extended to both Mrs. Green (Idol) and Mrs. McNutt, I think it susceptible of being exercised individually, under the circumstances shown here, and to the extent indicated.

For such reason, I respectfully dissent.

Kaul, J., joins in the foregoing dissent.